UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RODERICK OLAF FONSECA, | ) | Case No. 14cv787-LAB (BLM) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE GRANTING DEFENDANTS' MOTION TO DISMISS [ECF No. 9]** |
| v. | ) | |
| CDCR, et al., | ) | |
| Defendants. | ) | |
| | ) | **AND** |
| | ) | **ORDER DENYING PLAINTIFF'S REQUEST FOR INJUNCTION AND TO BE TRANSFERRED TO ANOTHER INSTITUTION [ECF No. 17]** |
| | ) | |
| | ) | |

This Report and Recommendation is submitted to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.  For the following reasons, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment for failure to exhaust administrative remedies be **GRANTED** and the case dismissed. Alternatively, the Court **RECOMMENDS** that Defendants' Motion to Dismiss for failure to state a claim be **GRANTED WITH LEAVE TO AMEND**.

## PROCEDURAL BACKGROUND

Plaintiff Roderick Olaf Fonseca, a state prisoner proceeding *pro se* and *in forma pauperis*, initiated this action on April 3, 2014 when he filed a complaint under the Civil Rights Act, 42 U.S.C. § 1983, against Defendants California Department of Corrections and Rehabilitations ("CDCR") and Jeffrey A. Beard, alleging that they violated his civil rights by instituting a new Jewish Kosher Diet Program ("JKDP"). ECF No. 1. Plaintiff alleges that on July 29, 2013, Calipatria State Prison implemented a new JKDP menu in which "all meat products" were removed "from the menu except for (1) one dinner a week and (1) one lunch a week." Id. at 3. Plaintiff states that the prison continued to provide non-kosher inmates with a significantly larger number of meals containing meat products. Id. Plaintiff asserts that the new JKDP menu violates his rights as an observant Jewish inmate under the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Id. Plaintiff requests general and punitive damages in amounts "to be determined at trial" and seeks an injunction to reinstate all meat products to the JKDP. Id. at 7.

On December 12, 2014, Defendants filed a motion to dismiss for failure to state a claim and for immunity under the Eleventh Amendment and motion for summary judgment for failure to exhaust administrative remedies. ECF No. 9. On December 17, 2014, the Court issued an "Order Providing Plaintiff Notice of Defendants' Motion for Summary Judgment Re Failure to Exhaust Administrative Remedies" in which the Court advised Plaintiff of the requirements for opposing Defendants' summary judgment motion. ECF No. 10. The Court ordered Plaintiff to file his opposition to Defendants' motion by January 30, 2015, and Defendants to file their reply by February 6, 2015. Id. at 3. On January 6, 2015, the Court granted Plaintiff's request for additional time to oppose the motions and ordered Plaintiff to file his opposition to Defendants' motions by March 2, 2015, and Defendants to file their reply by March 16, 2015. ECF No. 13 at 2.

Plaintiff filed his opposition on February 27, 2015, arguing that his complaint properly stated a cognizable claim, that Defendants are not immune under the Eleventh

Amendment, and that he has exhausted all of his administrative remedies. ECF No. 14 ("Oppo."). On March 3, 2015, Defendants filed a reply to Plaintiff's opposition, re-asserting their claims and arguing that the Court should not permit Plaintiff to add new allegations in his opposition that were not included in his Complaint. ECF No. 15 ("Reply").

## COMPLAINT ALLEGATIONS

In his complaint, Plaintiff alleges that CDCR and Jeffrey A. Beard, the Secretary of CDCR, violated his civil rights under the First Amendment, RLUIPA, and the Fourteenth Amendment in connection with a state-wide change in the JKDP implemented on July 29, 2013. ECF No. 1. Plaintiff states that the new JKDP only provides Kosher inmates with meat products once a week at dinner and once a week at lunch, while continuing to provide meat product dinners to non-Kosher inmates. Id. at 3. Plaintiff claims that this change forces Jewish inmates to become vegetarians and violates the Equal Protection Clause. Id.

## ANALYSIS

## I.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies prior to filing the instant action. ECF No. 9-1 ("Mot.") at 14-23.

### A.    Exhaustion Under the Prisoner Litigation Reform Act

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") of 1995 provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits." Porter v. Nussle, 534 U.S. 516, 524 (2002). The United States Supreme Court has confirmed that exhaustion is a mandatory prerequisite to filing suit in federal court. Id. Failure to exhaust may not be waived. See Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("[e]xhaustion is no longer left to the discretion of the district

1   court"). The United States Supreme Court has stated that "[t]here is no question that

2   exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought

3   in court." Jones v. Bock, 549 U.S. 199, 211 (2007).

4          To prevail on a motion for summary judgment, the defendant must prove that the

5   plaintiff failed to properly exhaust available administrative remedies. Albino v. Baca, 747

6   F.3d 1162, 1172 (9th Cir. 2014); see also Jones, 549 U.S. at 216 (inmates are not required

7   to specially plead or demonstrate exhaustion in his or her complaint because failure to

8   exhaust is an affirmative defense under the PLRA).  The defendant cannot demonstrate

9   an absence of exhaustion unless some relief remains available. Brown v. Valoff, 422 F.3d

10   926, 936-37 (9th Cir. 2005).  Therefore, the defendant must produce evidence that the

11   plaintiff did not properly exhaust a remedy that is available "as a practical matter" in that

12   it must be "capable of use" or "at hand." Albino, 747 F.3d at 1171.

13          Once the defendant meets that burden, the plaintiff must "come forward with

14   evidence showing that there is something in his particular case that made the existing and

15   generally available administrative remedies effectively unavailable to him." Id. at 1172.

16   The Ninth Circuit has consistently held that administrative remedies were unavailable

17   where the inmate was thwarted by affirmative misconduct or obstruction by prison officials.

18   See Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010) (screening out an inmate's

19   administrative grievance for improper reasons rendered administrative remedies

20   unavailable); see also Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (a prison

21   warden's mistake in misdirecting the inmate rendered administrative remedies

22   unavailable).  However, an inmate who did not make any attempt to properly utilize the

23   prison grievance system cannot sidestep the exhaustion requirement by arguing that it

24   now would be futile to attempt to exhaust within the prison system. Booth v. Churner, 532

25   U.S. 731, 741 n.6 (2001) ("we stress the point . . . that we will not read futility or other

26   exceptions into statutory exhaustion requirements where Congress has provided

27   otherwise."); see also Woodford, 548 U.S. at 100 ("if the party never pursues all available

28   avenues of administrative review, the person will never be able to sue in federal court.").

The Supreme Court in <u>Woodford</u> has held that an inmate cannot satisfy the PLRA exhaustion requirement by "filing an untimely or otherwise procedurally defective administrative grievance or appeal." <u>Id.</u> at 83-84. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with applicable procedural rules,'" defined by the specific prison grievance process in question. <u>Jones</u>, 549 U.S. at 218 (quoting <u>Woodford</u>, 548 U.S. at 88). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Woodford</u>, 548 U.S. at 90-91. This requirement serves PLRA's purpose because it "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." <u>Id.</u> at 94. Therefore, an inmate incarcerated in CDCR must comply with all the regulations and procedures of California's prison administrative appeals system to properly exhaust his claim. <u>See</u> <u>Marella v. Terhune</u>, 568 F.3d 1024, 1027 (9th Cir. 2009) ("[t]he California prison system's requirements 'define the boundaries of proper exhaustion'" for inmates bringing suit in California).

## B.    California Regulations

To properly exhaust available remedies for an administrative decision or perceived mistreatment in California, an inmate must proceed through three formal levels of review. Cal. Code Regs. tit. 15, §§ 3084.1-3084.9; <u>see also</u> <u>Dukes v. Garcia</u>, 2015 WL 1119487, at *2 (E.D. Cal. Mar. 11, 2015). The three levels include: "(1) a first level appeal, to be conducted by the division head or his or her designee"[1]; "(2) a second level appeal, to be conducted by the hiring authority or his or her designee; and (3) a third level appeal, to be conducted by the Office of Appeals in Sacramento, California (formerly the Inmate

---

[1] "All appeals shall be initially submitted and screened at the first level unless the first level is exempted." <u>Id.</u> § 3084.7(a). An appeals coordinator "may bypass the first level of appeal of (1) A policy, procedure or regulation implemented by the department. (2) A policy or procedure implemented by the institution head. (3) An issue that cannot be resolved at the division head level such as Associate Warden, Associate Regional Parole Administrator, CALPIA manager or equivalent. (4) Serious disciplinary infractions." <u>Id.</u> § 3084.7(a)(1-4).

Appeals Branch)." <u>Jones v. Paramo</u>, 2013 WL 4517829, at *6 (S.D. Cal. Aug. 19, 2013); Cal. Code Regs. tit. 15, §§ 3084.1, 3084.7. "The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal" and "exhausts administrative remedies." <u>Id.</u> § 3084.7(d)(3).

An appeal may be cancelled if it is untimely. <u>Id.</u> § 3084.6(c)(4). Once cancelled, the appeal shall not be accepted unless a determination is made that the cancellation was made in error or new information is received making the appeal eligible for further review. <u>Id.</u> §§ 3084.6(e), 3084.6(a)(3). A cancellation does not exhaust an appeal, though a cancellation at the Third Level may itself be appealed. <u>Id.</u> § 3084.6(e).

An inmate must submit his or her appeal "within 30 calendar days of: (1) The occurrence of the event or decision being appealed, or; (2) Upon first having knowledge of the action or decision being appealed, or; (3) Upon receiving an unsatisfactory departmental response to an appeal filed." <u>Id.</u> § 3084.8(b). The inmate may initiate litigation in federal court "only after the administrative process ends and leaves his grievances unredressed." <u>Vaden v. Summerhill</u>, 449 F.3d 1047, 1051 (9th Cir. 2006). "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 . . . , and addressed through all required levels of administrative review up to and including the third level." Cal. Code Regs. tit. 15, § 3084.1(b).

The CDCR also provides resolution at the informal level for inmates to address grievances "with staff and/or to request items and services." <u>Id.</u> § 3086(d)(1). An inmate who wishes to seek resolution at the informal level may submit a Form 22 written request. An inmate should submit a Form 22 only when he "seeks a response to an issue or concern related to his or her confinement or parole." <u>Id.</u> § 3086(b). The Form 22 request is not a formal level of review for administrative relief and neither "stay[s] the time constraints for filing an appeal" nor "constitute[s] exhaustion of administrative remedies as defined in subsection 3084.1(b)." <u>Id.</u> §§ 3086(e)(2), 3086(i). To properly exhaust his administrative remedies, an inmate is not required to seek resolution at the informal level

first, but he must utilize all three levels of formal review and obtain a third-level decision. See Dukes, 2015 WL 1119487, at *2; Cal. Code Regs. tit. 15, § 3084.7.[2] Thus, an inmate who submits a Form 22 but does not timely file a Form 602 does not properly exhaust available administrative remedies.  See Coreno v. Armstrong, 2011 WL 4571756, at *9 (S.D. Cal. Jul. 29, 2011).

###    C.    Summary Judgment

The proper vehicle for challenging a complaint based on failure to exhaust administrative remedies is a motion for summary judgment under Federal Rule of Civil Procedure ("FRCP") 56.  Albino, 747 F.3d at 1168 (overruling Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) which held that the proper procedural device for defendants to raise an exhaustion defense was an unenumerated FRCP 12(b)(6) motion to dismiss).  "If under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice."  Wells v. Kyte, 2014 WL 3058361, at *2 (E.D. Cal. July 3, 2014) (citing Wyatt, 315 F.3d at 1120, overruled on other grounds by Albino, 747 F.3d 1162).

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of demonstrating that summary judgment is proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate.  Id. at 322-24.  The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  In cases where the defendant is moving for summary judgment for plaintiff's failure to exhaust administrative remedies, the Ninth Circuit has held that

> the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy.  *See*

---

[2] Prior to January 28, 2011, an inmate was required to present an appeal at the informal level of appeal before filing an administrative appeal.

*id.* ("[T]he respondent . . . must show that domestic remedies exist that the claimant did not use."). Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *See id.* ("[T]he burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."). However, as required by *Jones*, the ultimate burden of proof remains with the defendant.

Albino, 747 F.3d at 1172.

A court may not weigh evidence or make credibility determinations on a motion for summary judgment; rather, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Furthermore, in order to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact. Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. Id.; Anderson, 477 U.S. at 256.

### D.    **Plaintiff's Use of Administrative Remedies**

Defendants contend that Plaintiff failed to properly exhaust THE administrative remedies for his claims because he did not "*timely* submit an administrative appeal concerning his complaints about the change in the JKDP." Mot. at 20. Defendants admit that Plaintiff submitted an administrative appeal on or about September 3, 2013, and that prison officials rendered a decision at the second level of review; however, Defendants argue that the appeal was not timely submitted, that it should have been denied as untimely at the first stage of review, and that therefore Plaintiff did not properly exhaust administrative remedies. Id. at 20-22. Defendants contend that Plaintiff became aware of the change to the JKDP on July 29, 2013, and should have submitted a From 602 grievance within thirty days of that knowledge. Id. at 20. Plaintiff responds that he exhausted all administrative remedies because he followed the administrative appeals procedures by timely submitting a CDCR Form 22 grievance and by submitting the Form 602 administrative appeal within thirty days of completing the CDCR Form 22 process.

1    Oppo. at 8-10.

2          The Court has carefully reviewed the documentary evidence submitted to it and

3    determined the following sequence of events.  On August 1, 2013, Plaintiff submitted a

4    Form 22 stating that on July 29, 2013, the prison implemented a new JKDP plan which

5    reduced the number of weekly meals containing meat to two.  ECF No. 1 at 29.[3]  Plaintiff

6    argued that the severe reduction in meals containing meat was unconstitutional and was

7    forcing him to become a vegetarian and he requested that the "meals return to a meat

8    protein diet."  Id.  The request was denied at the Supervisor's Level on August 13, 2013.

9    Id.  On September 3, 2013, Plaintiff submitted a Form 602 challenging the reduction in the

10   number of weekly kosher meals containing meat and alleged that the change violated his

11   constitutional rights and RUILPA.  Id. at 15-16.  This grievance was denied at the Second

12   Level on September 24, 2013 on the grounds that the new menu complies with all

13   nutritional requirements.  Id. at 18-19.  Plaintiff challenged this denial on September 25,

14   2013, stating

15         this appeal is not about the nutritional value or whether the meals are
            Kosher.  The meals are Kosher and we know that!  This appeal is on the fact
16         that: 1) the policy Laurie Maurino put into place of singling out the Jewish
            Kosher Diet Meal Participant(s) vs. both General Population and Religious
17         Meat Alternative, and taking away the meat products and replacing it with
            an all vegetarian meals . . . .  All the while continuing to serve a meat
18         product every day to both general population and Religious Meat Alternative,
            thus showing a difference in treatment violating the Equal Protection Clause
19         of the 14th Amendment.   2) CDCR can not force any Jewish inmate to
            become a vegetarian by taking all meat products away from the Jewish
20         Kosher Program . . . .

21   Id. at 13, 17.  Plaintiff's grievance was denied at the Third Level of Appeal on the grounds

22   that it was not timely since Plaintiff submitted his first Form 602 complaint on September

23   3, 2013, thirty-six days after he became aware of the policy change.  Id. at 14.  On

24   November 14, 2013, Plaintiff submitted a new Form 602 challenging the decision to deny

25   his complaint as untimely.  Id. at 12; see also ECF No. 9-3 at 29-32.  Plaintiff argued that

26   July 29, 2013 was the date he became aware of the menu policy change, that he timely

27   _____

28         [3] Defendants submitted many of the same documents with their motion for summary judgment.  ECF
     No. 9-3.  To the extent the documents are duplicates, the Court will cite to the documents submitted by
     Plaintiff with his complaint.

                                                    9                                    14cv787-LAB (BLM)

submitted a Form 22 complaint on August 1, 2013, that his Form 22 complaint was denied on August 13, 2013, which became the date that started his appeal time, and that he timely submitted his Form 602 complaint within thirty days of August 13, 2013. Id. This request was denied at the Third Level on January 30, 2014 on the grounds that the Form 602 complaint was submitted more than thirty days after Plaintiff became aware of the policy change. ECF No. 1 at 8-9.

The undisputed evidence establishes that Defendants have satisfied their initial burden of proving "that there was an available administrative remedy, and that [Plaintiff] did not exhaust that available remedy." Albino, 747 F.3d at 1172. Defendants provided a declaration from R. Briggs, the Acting Chief of the Office of Appeals for CDCR, describing the administrative appeal process available to Plaintiff, the specific efforts Plaintiff made to challenge the JKDP menu change, and the fact that Plaintiff has "successfully advanced five [unrelated] administrative appeals all the way through the third level of review between 2010 and June 7, 2013." ECF No. 9-3, Declaration of R. Briggs ("Briggs Decl."). Both parties submitted essentially the same documentation establishing that Plaintiff submitted a Form 22 complaint, a Form 602 complaint that was submitted at all three required levels, and a second Form 602 complaint in which Plaintiff argued that the prison incorrectly denied his third level appeal on the grounds that his complaint was not timely. See ECF Nos. 1, 9-3. As a result, Defendants have satisfied their initial burden and the burden now switches to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172.

In this case, Plaintiff does not argue or submit any evidence indicating that an administrative remedy was not effectively available to him. See Oppo. Plaintiff also does not provide any evidence indicating that his efforts to use the available administrative remedies were thwarted by affirmative misconduct or obstruction by Defendants or prison officials. See id. Rather, Plaintiff argues that his original Form 602 grievance was submitted in a timely manner because it was submitted within thirty days of the denial of

1   his Form 22 request.  Id. at 8-10.  Plaintiff asserts that he was required to use the Form

2   22 because his request was a "routine matter" that could be directly resolved with a staff

3   member or department.  Id. at 8.  Plaintiff argues that prison staff should have forwarded

4   his Form 22 request to Laurie Maurino, the Departmental Food Administrator, who could

5   have resolved Plaintiff's request.  Id. at 8-9.  Plaintiff concludes that because he properly

6   submitted a Form 22 request and prison staff failed to forward it to the proper person, his

7   Form 602 complaint, submitted within thirty days of the Form 22 denial, should be

8   considered timely.[4]

9        In 2011, the regulations were modified to eliminate the mandatory requirement that

10   an inmate attempt to resolve a grievance informally prior to filing an administrative appeal.

11   The current regulations allow an inmate to utilize a Form 22 to attempt to resolve

12   informally a grievance "with staff and/or to request items and services."  Cal. Code Regs.

13   tit. 15, § 3086(d)(1).  However, unless the prison directs an inmate to utilize the Form 22

14   process, the use of the form neither "stay[s] the time constraints for filing an appeal" nor

15   "constitute[s] exhaustion of administrative remedies as defined in subsection 3084.1(b)."

16   Id. §§ 3086(e)(2), 3086(i); see also Coleman v. Hubbard, 2012 WL 3038571, at *9 (E.D.

17   Cal. July 25, 2012).  Plaintiff has not presented any evidence indicating that the prison

18   required him to utilize the Form 22 process.[5]  Because Plaintiff was not required to utilize

19   the Form 22 process and because he did not submit his Form 602 grievance within thirty

20   days of the date he became aware of the policy change, Plaintiff's grievance is untimely

21

22        [4] Plaintiff also argues that his Form 602 grievance is not untimely because the inadequacy of the
     JKDP menu is ongoing and therefore his grievance is timely whenever it is submitted.  Oppo. at 9.  Plaintiff's
23   grievance challenges the JKDP policy implemented on July 29, 2013, and asks the prison to rescind the policy
     and reinstate an older policy.  ECF No. 1 at 15-16.  As such, the grievance currently at issue involves a policy
24   that Plaintiff became aware of by July 29, 2013, and therefore the statutory time period properly began to
     run on July 29, 2013, and Plaintiff's Form 602 grievance was untimely.  See Cal. Code Regs. tit. 15, § 3084.8.
25   The Court notes that Plaintiff has submitted other prison grievances challenging aspects of the ongoing
     implementation of the JKDP policy.  See Oppo. at 32-37.
26
        [5] Plaintiff submitted a letter from an Appeals Coordinator dated February 11, 2011, requiring Plaintiff
27   to utilize the Form 22 process to attempt to resolve a grievance regarding the "proper preparation of Kosher
     Meals."  Oppo. at 39-40.  This document addresses a different, unrelated grievance that occurred two years
28   before the instant grievance and therefore does not require Plaintiff to utilize the Form 22 process in the
     instant case.

and not properly exhausted, and therefore must be dismissed. <u>Porter</u>, 534 U.S. at 524; <u>Jones</u>, 549 U.S. at 211; <u>Woodford</u>, 548 U.S. at 85, 100.   Accordingly, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** and this pending case dismissed.

## II.   DEFENDANTS' MOTION TO DISMISS

Defendants also move to dismiss Plaintiff's claims for relief under the First Amendment, RLUIPA, and the Fourteenth Amendment pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted and all of Plaintiff's claims against the CDCR on the basis that they are prohibited by the Eleventh Amendment. Mot. at 9-14.

### A.   Legal Standard

Pursuant to FRCP 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims.  Fed. R. Civ. P. 12(b)(6).  The issue is not whether the plaintiff ultimately will prevail, but whether he has properly stated a claim upon which relief could be granted. <u>Jackson v. Carey</u>, 353 F.3d 750, 755 (9th Cir. 2003).  In order to survive a motion to dismiss, a Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 663 (quoting <u>Twombly</u>, 550 U.S. at 570).  If the facts alleged in the complaint are "merely consistent with" the defendant's liability, the plaintiff has not satisfied the plausibility standard. <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  This rule of liberal construction is "particularly important" in civil rights cases.  Hendon v. Ramsey, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. 2007) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (stating that because "*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter the Court's treatment of *pro se* filings; accordingly we continue to construe *pro se* filings liberally . . . ."  This is particularly important where the petitioner is a *pro se* prisoner litigant in a civil rights matter).  When giving liberal construction to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim[] that were not initially pled."  Easter v. CDC, 694 F. Supp. 2d 1177, 1183 (S.D. Cal. 2010) (quoting Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  Id.  (quoting Ivey, 673 F.2d at 268).

The court should allow a *pro se* plaintiff leave to amend his or her complaint "unless the pleading could not possibly be cured by the allegation of other facts."  Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation marks and citations omitted).  Moreover, "before dismissing a *pro se* complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively."  Wayne v. Leal, 2009 WL 2406299, at *3 (S.D. Cal. Aug. 4, 2009) (quoting Ferdik, 963 F.2d at 1261).

To state a claim under § 1983, a plaintiff must allege facts sufficient to show that (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some "rights, privileges, or immunities" protected by the Constitution of the laws of the United States.  42 U.S.C. § 1983.  To prevail on a § 1983 claim, "a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct

of that defendant." <u>Harris</u>, 652 F. Supp. 2d at 1034 (citation omitted). A particular defendant is liable under § 1983 only when the plaintiff proves he participated in the alleged violation. <u>Id.</u>

**B.    <u>Free Exercise of Religion Under the First Amendment</u>**

The Free Exercise Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, forbids laws prohibiting the free exercise of religion. U.S. Const. Amend. I.  Prisoners "do not forfeit all constitutional protections by reason of their conviction and confinement in prison," <u>Bell v. Wolfish</u>, 441 U.S. 520, 545 (1979), and retain protections such as the free exercise of religion under the First Amendment. <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987).  "A prisoner's First Amendment right to freely exercise his religious beliefs, however, is 'necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security.'"  <u>Davis v. Powell</u>, 901 F. Supp. 2d 1196, 1223 (S.D. Cal. 2012) (quoting <u>McElyea v. Babbitt</u>, 833 F.2d 196, 197 (9th Cir. 1987)).

To state a section 1983 claim for a violation of his First Amendment free exercise rights, a prisoner must allege facts showing that a prison regulation substantially burdens his "sincerely held" religious belief.  <u>Shakur v. Schriro</u>, 514 F.3d 878, 885 (9th Cir. 2008) (finding that a prison's refusal to provide a kosher meat diet implicates the Free Exercise Clause because the plaintiff sincerely believed that he had to consume kosher meat to maintain his religious belief).  "To substantially burden the practice of an individual's religion, the interference must be more than an inconvenience, . . . or an isolated incident or short-term occurrence . . . ."  <u>Harris v. Schriro</u>, 652 F. Supp. 2d 1024, 1034 (D. Ariz. 2009) (citation omitted).  The Ninth Circuit has consistently held that "[i]nmates also have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion."  <u>McElyea</u>, 833 F.2d at 198; <u>see also</u> <u>Ward v. Walsh</u>, 1 F.3d 873, 877 (9th Cir. 1993).

Plaintiff's complaint alleges that by following the JKDP, Defendants have reduced the number of meat products provided to Jewish kosher inmates to one dinner and one

lunch per week, while continuing to make meat products available with every dinner for non-Kosher inmates and Religious Meat Alternative inmates.  ECF No. 1 at 3.  Plaintiff concludes that the menu modification treats "observant Jewish Kosher Diet Participant(s) differently by forcing JKDP inmate(s) to become vegetarian while continuing to provide meat products to all other inmates."  Id.  The complaint does not provide any facts alleging that the JKDP interferes with a "sincerely held" religious belief or that it is a "substantial burden" to the practice of his religion.  See Shakur, 514 F.3d at 885.  As a result, the complaint fails to state a claim for a violation of the First Amendment.

In his opposition, Plaintiff explains at length about the importance of the "eating experience" in Judaism and the relevance and applicability of the Kosher laws.  Oppo. at 1-6.  Plaintiff concludes that the reduction of meat products in the JKDP "places a substantial burden on a Jews' belief in the Torah, and his/her religious rights to follow its practices, beliefs, and precepts."  Id. at 5.  While Plaintiff's opposition contains facts and statements indicating that Plaintiff may have a "sincerely held" religious belief regarding the amount and type of meat products available to him, the complaint does not.  The Court may not supply essential elements to Plaintiff's claims set forth in Plaintiff's complaint.  See Easter, 694 F. Supp. 2d at 1183.  Because Plaintiff's opposition indicates that Plaintiff may be able to allege additional facts that state a violation of the First Amendment, the Court **RECOMMENDS** that Defendants' motion to dismiss this claim be **GRANTED WITH LEAVE TO AMEND.**

### C.   Religious Land Use and Institutionalized Persons Act

Section 3 of RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling governmental interest" and does so by "the least restrictive means."  42 U.S.C. §§ 2000cc-1(a)(1)-(2).  RLUIPA provides a statutory basis for "protect[ing] prisoners and other institutionalized people from government infringement on their practice of religion."  Mayweathers v. Newland, 314

F.3d 1062, 1065 (9th Cir. 2002).  "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."  42 U.S.C. § 2000cc-2(a).  The Supreme Court has upheld RLUIPA to protect "institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

To state a claim under RLUIPA, a plaintiff must make a prima facie showing that the challenged policy (1) substantially burdens (2) the exercise of his "sincerely held religious belief."  Holt v. Hobbs, 135 S.Ct. 853, 862 (2015).  RLUIPA broadly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc–5(7)(A).  Courts in the Ninth Circuit have recognized that a "'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise."  Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005) (citing San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)).  In Warsoldier, the Ninth Circuit held that a policy which placed significant pressure on the inmate to cut his beard and abandon his religious belief imposed a substantial burden on his religious practice.  418 F.3d at 996.  Similarly, "an outright ban on a particular religious exercise is a substantial burden on that religious exercise."  Greene v. Solano Cnty. Jail, 513 F.3d 982, 988 (9th Cir. 2008) (citations omitted).

Plaintiff's complaint provides the exact same facts and allegations in support of the RLUIPA claim as it does for the First Amendment violation.  ECF No. 1 at 3.  Plaintiff's opposition also provides the same support and argument for both violations.  Oppo. at 1-6.  For the reasons set forth above with regard to the First Amendment claim, the Court finds that Plaintiff's complaint does not allege that the JKDP substantially burdens the exercise of his sincerely held beliefs.  The Court therefore **RECOMMENDS** that Defendants' motion to dismiss this claim be **GRANTED WITH LEAVE TO AMEND.**

///

///

1      **D.    <u>Equal Protection Under the Fourteenth Amendment</u>**

2      The Equal Protection Clause of the Fourteenth Amendment protects prisoners from,

3  among other things, "invidious discrimination based on race." See <u>Wolff v. McDonnell</u>, 418

4  U.S. 539, 556 (1974).  The clause "commands that no State shall 'deny to any person

5  within its jurisdiction the equal protection of the laws,' which is essentially a direction that

6  all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living</u>

7  <u>Ctr.</u>, 473 U.S. 432, 439 (1985).  The Equal Protection Clause "entitles each prisoner to 'a

8  reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow

9  prisoners who adhere to conventional religious precepts.'" <u>Shakur</u>, 514 F.3d at 891

10  (quoting <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972)).  However, in the prison context, "even

11  fundamental rights such as the right to equal protection are judged by a standard of

12  reasonableness–specifically, whether the actions of prison officials are 'reasonably related

13  to legitimate penological interests.'" <u>Walker v. Gomez</u>, 370 F.3d 969, 974 (9th Cir. 2004)

14  (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987)).

15      The Ninth Circuit has held that "§ 1983 claims based on Equal Protection violations

16  must plead intentional unlawful discrimination or allege facts that are at least susceptible

17  of an inference of discriminatory intent." <u>Monteiro v. Tempe Union High Sch. Dist.</u>, 158

18  F.3d 1022, 1026 (9th Cir. 1998) (citations omitted).  To state a claim under the Equal

19  Protection Clause, a plaintiff must allege facts that "the defendants acted with an intent

20  or purpose to discriminate against the plaintiff based upon membership in a protected

21  class." <u>See</u> <u>Furnace v. Sullivan</u>, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting <u>Barren v.</u>

22  <u>Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998)); <u>see also</u> <u>Thornton v. City of St. Helens</u>,

23  425 F. 3d 1158, 1166 (9th Cir. 2005) (requiring a plaintiff to show that the defendants'

24  actions were a result of the plaintiff's membership in a suspect class in order to state a

25  section 1983 claim for violation of the Equal Protection Clause); <u>Davis</u>, 901 F. Supp. 2d at

26  1220-21 (denying the defendant's motion to dismiss because the plaintiff sufficiently

27  alleged facts that demonstrated discriminatory intent by stating the defendant instituted

28  a prison policy limited to Muslim-specific items).

Here, Plaintiff again relies on the same allegations to support his Equal Protection claim. ECF No. 1 at 3. As a result, Plaintiff's claim is an unsupported conclusive statement that inmates receiving the Jewish kosher meals receive less meat products in their diets than do inmates receiving the non-kosher meals or the Religious Meat Alternative meals. Id. This statement is insufficient to state a claim. Even accepting Plaintiff's statement as true, it is too conclusory to satisfy the pleading requirements. Plaintiff must plead facts supporting his allegations that Defendant Beard instituted a policy designed to discriminate against (or resulting in the discrimination against) Jewish kosher prisoners on the basis of their religion. See Monteiro, 158 F.3d at 1026; Furnace, 705 F.3d at 1030; Thornton, 425 F.3d at 1166. Plaintiff's bald conclusion is insufficient, as are the attached menus which indicate more meals containing meat products in the Jewish kosher meals than Plaintiff admits. See ECF No. 1 at 20-28. Because it is not clear that Plaintiff cannot state facts alleging a violation of the Equal Protection Clause, the Court **RECOMMENDS** that Defendants' motion to dismiss this claim be **GRANTED WITH LEAVE TO AMEND.**

E.   **Immunity Under the Eleventh Amendment**

Defendants also argue that Defendant CDCR is entitled to qualified immunity under the Eleventh Amendment because the CDCR, "as a state agency, is absolutely immune from a suit in federal court under the Eleventh Amendment." Mot. at 9-10. The Eleventh Amendment bars suits "by private parties against States and their agencies." Alabama v. Pugh, 438 U.S. 781 (1978); U.S. Const. Amend. XI. An inmate cannot recover damages from a state or its agency under section 1983 unless the state waives its immunity. See Easter, 694 F. Supp. 2d at 1184 (citations omitted). A section 1983 suit does not abrogate this immunity because a state or a state agency is not a "person under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 62 (1989). Courts have consistently held that state prisons and the CDCR, as state agencies, are entitled to Eleventh Amendment protection. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that the Nevada Department of Prisons is a state agency immune from suits under the Eleventh Amendment); Darden v. Cal. Dep't of Corr., 2009 WL 291863, at *2 (C.D. Cal. Feb. 4,

2009) ("Because CDCR is a state agency . . . [it is] entitled to Eleventh Amendment immunity from suit."). The Court therefore **RECOMMENDS** that Defendants' motion to dismiss CDCR be **GRANTED WITHOUT LEAVE TO AMEND.**

### CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, and (2) granting Defendants' motion for summary judgment or, in the alternative, granting with leave to amend Defendants' motion to dismiss for failure to state a claim and without leave to amend Defendants' motion to dismiss Defendant CDCR.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than July 3, 2015**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than July 24, 2015**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

### III.   PLAINTIFF'S MOTION FOR INJUNCTION AND TO BE TRANSFERRED TO ANOTHER INSTITUTION

On April 28, 2015, Plaintiff filed a "Petition for Request for Injunction and Order for Transfer to Richard J Donovan State Prison in San Diego California." ECF No. 17. Plaintiff seeks an injunction directing Defendants to order Corcoran State Prison[6] to provide him with Jewish kosher meals that comply with the kosher certification issued by Rabbi Aryeh Ralbag. Id. at 2. Plaintiff explains that Rabbi Ralbag "issued a kosher certificate with very specific instructions that only meals with specific SKU numbers are certified kosher," and asserts that beginning on March 30, 2015, certain breakfast and lunch meals served to

---

[6] On December 10, 2014, Plaintiff was transferred from Calipatria State Prison to Corcoran State prison. See ECF No. 11.

Plaintiff at Corcoran State prison did not have the "SKU number(s) as defined by the kosher certification." See id. at 1.  Plaintiff further asks the Court to order Defendants to immediately transfer him to Richard J. Donovan State Prison ("RJD") in San Diego, California, where Plaintiff believes the Jewish Kosher Program is being properly administered.  ECF No. 17 at 2-3.

On May 14, 2015, Defendants filed their opposition asserting that Plaintiff's request for injunction is based on conduct and issues outside of the complaint filed in this case. ECF No. 19 at 4-5. Defendants offer as evidence the Declaration of A. Pacillas, the Appeals Coordinator at  Corcoran State Prison, who asserts that "[t]he only administrative appeal [Plaintiff] submitted containing complaints about SKU numbers" not appearing on kosher food items was received on April 29, 2015, and was "screened out."[7]  See ECF No. 19-1, Declaration of A. Pacillas ("Pacillas Decl.") at 3-4.  Defendants further claim that there is no need for an order compelling prison officials at Corcoran State Prison to serve Plaintiff kosher meals because Plaintiff is already receiving kosher meals.  ECF No. 19 at 5.   In support, Defendants provide the Declaration of L. Maurino, the CDCR Departmental Food Administrator, who states that the kosher certification provided by Rabbi Ralbag specifies that the meals containing the "triangle K" kosher logo are kosher,[8] and that all the labels provided by Plaintiff from food items served to him at Corcoran State Prison contain the "triangle K" logo.  ECF No. 19-2, Declaration of L. Maurino ("Maurino Decl.") at 3.  Finally, Defendants assert that an order to transfer Plaintiff to a different prison would "make no difference," because the CDCR obtains all kosher meals from one vendor in one central location in West Sacramento, where the meals are inspected and certified by Rabbi Ralbag,

---

[7] Appeals Coordinator Pacillas explains that Plaintiff's appeal was "screened out because it was not properly submitted according to California regulations.  Pacillas Decl. at 3.  Pacillas further asserts that even if Plaintiff properly submitted the appeal, "the review process would only be starting at this time."  Id.

[8] Maurino asserts that the final paragraph of the kosher certification "makes . . . clear" that "the meals packaged by ABC Ventures containing the 'triangle K' kosher logo are in fact kosher."  Maurino Decl. at 3.  The last paragraph of the kosher certification contains the following statement by Rabbi Aryeh Ralbag: "I certify that the above Bateman Facility Kosher meals are absolutely free from any forbidden substances and *are strictly Kosher under my Rabbinical supervision when bearing the [triangle K] Kosher identification* and received in its original double wrap seal stating either Pareve, Dairy or Glatt meat."  See ECF No. 17 at 5 (emphasis added).

1   and because the same meals are distributed to the CDCR's prisons throughout the state.

2   ECF No. 19 at 5-7; Maurino Decl. at 3.

3          On June 5, 2015, Plaintiff filed a lengthy reply in which he concedes that his suit is

4   "about the religious rights to have meat in the Jewish Kosher Diet and [the] frequency of

5   meat served," but argues that if the kosher meals do not comply with the "Kosher

6   Certification issued by the Rabbatical Authority," the meals are not kosher.  ECF No. 21 at

7   1.   Plaintiff explains that the certification instructions by Rabbi Aryeh Ralbag require

8   specific SKU numbers, and that the "Triangle K" Logo only proves "that agency oversaw

9   and issued the Kosher Certification."  Id. at 2.  Plaintiff acknowledges that his appeal about

10  SKU numbers not appearing on kosher food items was screened out because it contained

11  multiple issues, but argues that "one related issue" in the appeal concerned his complaints

12  of "not being served a kosher meal that ha[s] the [appropriate] SKU Number."  ECF No.

13  21 at 4.  Plaintiff asserts that compliance with the Kosher Certification would eliminate the

14  CDCR's costs associated with this litigation and promote judicial efficiency, and that he

15  would suffer an irreparable health injury if forced to "go without proper Kosher Certified

16  Meals with the required SKU Numbers."  Id. at 4-5.  Finally, Plaintiff argues that the

17  transfer to RJD will address his complaints about the SKU numbers, because RJD's Rabbi's

18  duties include "oversee[ing] the JKPD in order to assure the program is following CDCR

19  Policy and Procedures and Kosher Laws."  Id. at 2.

20         "A plaintiff seeking a preliminary injunction must establish that he is likely to

21  succeed on the merits, that he is likely to suffer irreparable harm in the absence of

22  preliminary relief, that the balance of equities tips in his favor, and that an injunction is in

23  the public interest."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see

24  also Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation

25  and internal quotation and editing marks omitted) ("a preliminary injunction could issue

26  where the likelihood of success is such that serious questions going to the merits were

27  raised and the balance of hardships tips sharply in plaintiff's favor," so long as the plaintiff

28  demonstrates irreparable harm and shows that the injunction is in the public interest).  A

motion for a preliminary injunction is properly denied if it is premised "on new assertions of mistreatment that are entirely different from the claim raised and the relief requested" in the case at issue.  Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994); see also Ashker v. Brown, 2013 WL 1701702, at *2 (N.D. Cal. Apr. 18, 2013) (same).

In the instant motion, Plaintiff seeks an injunction directing Defendants to order Corcoran State Prison to provide him with Jewish kosher meals that contain certain SKU numbers "as defined by the kosher certification" issued by Rabbi Aryeh Ralbag.  ECF No. 17 at 2.  The complaint in the instant case only asserts violations based on the allegation that the new JKPD only provides Kosher inmates with meat products once a week at dinner and once a week at lunch, while continuing to provide non-Kosher inmates with a significantly larger number of meals containing meat products. ECF No. 1. Because Plaintiff's request for an injunction is based on conduct and issues outside of the complaint, the Court **DENIES** Plaintiff's motion for an injunction.

Furthermore, the Court does not have jurisdiction to order Plaintiff to be transferred to another institution.  See Sharma v. Johnson, 2014 WL 2769139, at *4 (E.D. Cal. June 18, 2014) (construing portion of petitioner's civil rights complaint for a prison transfer as a habeas petition brought under 28 U.S.C. § 2241 and denying the request for transfer where the "court lack[ed] jurisdiction to order the petitioner's transfer to another prison [because] Title 18 U.S.C § 3621(b) gives the BOP [Bureau of Prisons] authority to 'designate the place of the prisoner's imprisonment' and the discretion to 'direct the transfer of a prisoner from one penal or correctional facility to another.'").  "Title 18 U.S.C. § 3625 prohibits judicial review of 'any determination, decision, or order' that the BOP makes under 18 U.S.C. § 3621." Id. (citing Tapia v. United States, ––– U.S. –––, 131 S.Ct. 2382, 2391-92 (2011) and Reeb v. Thomas, 636 F.3d 1224, 1227-29 (9th Cir. 2011) ("Although judicial review remains available for allegations that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority," review of the BOP's discretionary decisions regarding an individual inmate's place of incarceration falls outside federal courts' subject matter jurisdiction) (internal

quotation marks omitted)).  Accordingly Plaintiff's motion for transfer to another institution is **DENIED**.

　　　　**IT IS SO ORDERED**.

DATED:  June 10, 2015

BARBARA L. MAJOR
United States Magistrate Judge